IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DENVER WAYNE PENNINGTON                                                                  PLAINTIFF

v.                          Civil No.  12-5016

SHERIFF TIM HELDER, et al.                                                                DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff, Denver W. Pennington, under the provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.* He names as Defendants, Sheriff Tim Helder, Officer Nathan Conner, Officer Dalton Shephard, Officer Ethan Murphy, and Sergeant Jeremy Fuller.  Defendants have demanded a jury trial.

On November 30, 2012, Defendants filed a motion for summary judgment (Docs. 26-28). Plaintiff filed a response (Doc. 33).  On January 9, 2013, a hearing was held on the motion for summary judgment.  The motion is now ready for resolution.

**1.  Background**

While he was incarcerated at the Washington County Detention Center (WCDC) Pennington maintains the Defendants violated his rights in the following ways: (1) they utilized mass punishment; (2) the jailers were allowed to bring tobacco into the facility; (3) jailers used inappropriate language, were rude, and unprofessional; and (4) there was fraternization.  The testimony of the following witnesses was taken: (1) Pennington; and (2) Thomas Rollins.  For purpose of discussion, I will summarize the testimony of these two witnesses.

### Pennington

Pennington was incarcerated at the WCDC from October 11, 2011, to sometime in January or early February 2012. He was being held on pending criminal charges and also on a parole violation.

Pennington testified that his claim regarding mass punishment arose out of an incident occurring on November 15, 2011. The inmates were all lining up for "chow" and Pennington was slow in responding to the order to line up because he had just finished exercising and was sweaty. Officer Conner then "walked up" on Pennington. In response, Pennington asked for personal space.

Pennington acknowledged that Conner gave him a direct order to get in line for his tray; Pennington did not comply with this order. Pennington maintains that Conner responded by punishing the whole pod by feeding all other pods first, shutting the phones off, and not allowing inmates to go in their cells at 7:00 p.m. as usual. Additionally, Pennington testified he could not exercise; did not get a shower at the normal time; and did not get commissary.

Pennington believed Conner's actions endangered his safety as the mass punishment made the other inmates "mad" at Pennington. Pennington testified that evening that another inmate started an altercation with him because he was upset about not being able to use the phone.

In Pennington's opinion, if he broke a rule, he should be the only one punished. The "mass punishment" lasted for the rest of the day and everything was back to normal the following day. On another occasion, Pennington was working out under the stairs. Conner again punished the whole pod.

-2-

Pennington testified that his second claim was based on the jailers bringing smokeless tobacco, for their own use, into the jail. Pennington testified that if the inmates were obligated to follow the ban on smokeless tobacco, the jailers should have also had to comply. Pennington submitted a grievance about this and was told he could move to another pod.

Pennington's final claim is with regard to fraternization. Pennington did not believe that jailers should be allowed to work with their spouse. Penning testified that in one particular instance, he asked Conner for an opinion dealing with his property. Pennington disagreed with Conner and asked to speak with another ranking officer. Conner brought his wife, an officer at the jail, to give the second opinion.

Pennington named Sheriff Helder as a Defendant because he is ultimately over the jail. Pennington refers the Court to Section 7-1001 of the WCDC Policy Manual which states the "Chief Executive and/or Administrator shall be responsible for seeing that each employee of the Facility is briefed on the care, treatment, custody, and control of inmates." *Plff's Ex.* 3. With respect to Shepard and Murphy, Pennington indicated they both did a lot of cussing, made rude comments, and did not act in a professional manner.

**Thomas Rollins**

Rollins testified he was incarcerated in the WCDC from September of 2011 to December of 2011. Rollins testified that jail policy prohibited the possession of tobacco of any kind, fire arms, and contraband. Despite this, officers were "dipping." Jail personnel stated that the policy only applied to inmates.

According to Rollins, so many grievances were written, that jail personnel began to ignore them. In fact, he testified that he was told they were throwing them out.

AO72A
(Rev. 8/82)

## 2. Applicable Standard

In this case, there is both a pending summary judgment motion and a demand for a jury trial. A pretrial evidentiary hearing may be utilized to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Johnson v. Bi–State Justice Center, 12 F.3d 133, 135 (8th Cir. 1993)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). When both sides present evidence, the procedure "resembles a summary judgment motion with live evidence." Id. The Court must avoid credibility determinations, believe the Plaintiff's evidence, and draw all justifiable inferences in the Plaintiff's favor. Id. at 136.

## 3. Discussion

Defendants maintain they are entitled to summary judgment in their favor as no constitutional violation occurred. Additionally, or in the alternative, Defendants maintain they are entitled to qualified immunity.

### (A). Group or Mass Punishment

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. Amend. VIII. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Pennington maintains that Conner engaged in unconstitutional "mass punishment" when he took away the phones and commissary. Pennington admitted, however, that he did not know

if Conner had in fact told someone to shut the phones off. Additionally, inmates received their commissary items the following morning. No claim of constitutional dimension has been stated. Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitations or retraction of an inmate's rights. See Baribeau v. City of Minneapolis, 596 F.3d 465, 483 (8th Cir. 2010). The measures allegedly taken by Conner, while they may have been disagreeable to the inmates, did not violate the Eighth Amendment. See e.g., Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989)(Eighth Amendment claim evaluated in terms of whether the conduct was "so inhumane, base or barbaric so as to shock the sensibilities."); Pelzer v. Shea, 470 Fed. Appx. 62, 2012 WL 975430 (3d Cir. March 23, 2012).(loss of phone time, commissary, etc. as a result of a disciplinary did not implicate a constitutionally protected right).

**(B). Use of Smokeless Tobacco**

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class. See e.g., Purisch v. Tennessee Technological University, 76 F.3d 1414, 1424 (6th Cir. 1996). No claim of constitutional dimension is stated here. Inmates are not similarly situated to jail personnel and no fundamental right is involved.

**(C). Rude, Abusive, and Unprofessional Behavior**

Pennington's claims based on the alleged verbal abuse and unprofessional conduct of Murphy and Shephard fail as a matter of law. "Verbal threats do not constitute a constitutional

-5-

violation." Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, threats, name calling, and the use of offensive language do not state a claim of constitutional dimension. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); Martin, 780 F.2d at 1338-1339 (being called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim); cf. Burton v. Livingston, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

### (D). Fraternization

Pennington's final claim is his objection to the WCDC hiring, and scheduling for the same shift, married couples. "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989). They are not entitled to dictate jail personnel policy. No claim of constitutional dimension is stated.

### (4). Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Docs. 26-29) be granted and this case dismissed.

AO72A
(Rev. 8/82)

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 21st day of March 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)